No. 24-685

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

REX REAL ESTATE EXCHANGE, INC.

*Plaintiff-Appellant,*

v.

ZILLOW GROUP, INC., ET AL.

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:21-cv-00312
Hon. Thomas S. Zilly

**PLAINTIFF-APPELLANT'S OPPOSITION TO DEFENDANTS-
APPELLEES' MOTION TO MAINTAIN PORTIONS OF
VOLUMES 7-10 OF PLAINTIFF-APPELLANT'S EXCERPTS
OF RECORD AND OPENING BRIEF UNDER SEAL**

**(REDACTED)**

STEPHEN N. ZACK
URSULA UNGARO
CARL GOLDFARB
JON L. MILLS
JAMES GRIPPANDO
JASON S. ZACK
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, Florida 33131

DAVID BOIES
DAVID A. BARRETT
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, New York 10504

SIMON P. LEEN
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, California 90067

*Counsel for Plaintiff-Appellant REX Real Estate Exchange, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................ 1

LEGAL STANDARD ........................................................................ 2

I.     Redactions to Brief ............................................................. 6

       A.     "Zillow knew that consumers hated" the two-tab display ................... 7

       B.     Moreover, Zillow executives acknowledged that following NAR's
              IDX rules would cost Zillow a measure of independence, while the
              benefits to Zillow's business model were at best 'a wash.'" .............. 9

II.    Redactions and Sealing Record Excerpts ..................................... 10

       A.     Volume 7 Redactions ......................................................... 11

       B.     Volume 8 and 9 Redactions (Evans Report) .................................. 13

       C.     Volume 9 Redactions ......................................................... 14

       D.     Volume 10 Redactions ........................................................ 15

CONCLUSION ............................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bush v. Rust-OleumCrop.*,
  No. 24-913, 2024 WL 1328234 (9th Cir. Mar. 26, 2024) ................................... 4

*CBS, Inc. v. U.S. Dist. Ct.*,
  765 F.2d 823 (9th Cir. 1985) .................................................................................. 2

*Center for Auto Safety v. Chrysler Group, LLC*,
  809 F.3d 1092 (9th Cir. 2016) ............................................................................3, 4

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*,
  990 F.3d 1364 (Fed. Cir. 2021) ............................................................................. 3

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*,
  457 U.S. 596 (1982) ............................................................................................... 2

*In re Cendant Corp.*,
  260 F.3d 183 (3d Cir. 2001) ................................................................................... 6

*IPSL, LLC v. Coll. Of Mount Saint Vincent*,
  383 F. Supp. 3d 1128 (D. Or. 2019) ...................................................................... 5

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ............................................................................2, 3, 10

*Mulato v. Wells Fargo Bank, N.A.*,
  76 F. Supp.3d 929 (N.D. Cal. 2014) ...................................................................... 6

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................... 2

*Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*,
  No. 17-cv-555-L-NLS, 2018 WL 6601671 (S.D. Cal. Dec. 14, 2018) ...............10

*Press-Enter. Co. v. Super. Ct. of Cal.*,
  464 U.S. 501 (1984) ............................................................................................... 4

*Raulerson v. Massanari*,
  25 F. App'x 589 (9th Cir. 2001) ............................................................................ 4

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   825 F3d 299 (6th Cir. 2016)..........................................................................3, 4, 6

*Total Recall Techs. v. Luckey*,
   No. 21- 15590, 2021 WL 5401664 (9th Cir. Nov. 18, 2021) ................................ 3

## **INTRODUCTION**

Appellant REX Real Estate Exchange, Inc. respectfully opposes the Motion to Maintain Portions of Volumes 7-10 of Appellant's Excerpts of Record and Opening Brief under Seal filed by Appellee Zillow Group, Inc. (Dkt. 45).

As the party seeking to restrict access to judicial records, Zillow bears the heavy burden of demonstrating a compelling interest that outweighs the strong presumption of public access to court documents. Far from satisfying that burden, however, Zillow—which advertises itself out as "turning on the lights", valuing transparency and empowering consumers by supplying them with information—baselessly seeks in this antitrust action to hide embarrassing documents and testimony that are plainly relevant to the appeal.

Rather than submitting the requisite compelling evidence, Zillow offers mere conclusory assertions that the documents and testimony contain confidential business information. Zillow's sole evidence is the declaration of a paralegal who lacks any apparent qualifications to attest to confidentiality or the impact of disclosure on the company. Among other things, Zillow ignores that much of the purportedly confidential information is in sum and substance already in the public record of the proceedings below and, with few exceptions, relates to business strategies that have been implemented or abandoned. REX submits that the public's

1

right to access judicial records, as enshrined in the First Amendment, common law

and this Court's rules, must be upheld, and that the motion should be denied.

## LEGAL STANDARD

There is a right of public access to judicial records and documents. *See Nixon*

*v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of

this country recognize a general right to inspect and copy public records and

documents, including judicial records and documents."); *Kamakana v. City & Cnty.*

*of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (in considering motions to seal, "a

strong presumption in favor of access is the starting point" (internal quotation marks

omitted)). This right of access is premised on "the common understanding that 'a

major purpose of [the First] Amendment was to protect the free discussion of

governmental affairs.'" *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457

U.S. 596, 604 (1982) (citation omitted). Open access to court documents allows "the

public to participate in and serve as a check upon the judicial process—an essential

component in our structure of self-government." *Id.* at 606.

This Court has long recognized a strong public right of access to judicial

filings. *See CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985). This "right

of access is grounded in the First Amendment and in common law and extends to

documents filed in pretrial proceedings as well as in the trial itself." *Id.* Where a

filing relates to the merits of an action—as do the materials at issue here—"[a] party

2

seeking to seal a judicial record[ ] bears the burden of overcoming th[e] strong presumption [of public access] by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178-79. Because motions for summary judgment go to the merits of an action, as compared for example to a discovery motion, this Court has "applied the 'compelling reasons, standard to documents attached to a motion for summary judgment." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097–1098 (9th Cir. 2016).

To satisfy the "compelling reasons" standard, specificity is essential. Parties seeking to seal must "demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F3d 299, 308 (6th Cir. 2016); *see Total Recall Techs. v. Luckey*, No. 21- 15590, 2021 WL 5401664, at *1 (9th Cir. Nov. 18, 2021) (affirming denial of party failed to provide "specific" or "compelling" evidence); *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1373 (Fed. Cir. 2021) (affirming unsealing of purportedly confidential business information where party seeking to prevent disclosure failed to explain how it "would harm its proprietary and competitive business interests" (citations and internal quotation marks omitted)). Moreover, even when parties can show a compelling reason to keep some information in some documents confidential, the order still must be "narrowly tailored to serve

that reason." *Shane Grp.*, 825 F.3d at 305; *see Press-Enter. Co. v. Super. Ct. of Cal.*,
464 U.S. 501, 510 (1984) ("The presumption of openness may be overcome only by an
*overriding interest* based on findings that *closure is essential* to preserve higher values
and is *narrowly tailored* to serve that interest." (emphasis added)).

Furthermore, before allowing filings to be sealed, a court must weigh the
compelling First Amendment interest in open court proceedings against the asserted
need for confidentiality within the context of the gravamen of the particular case—
here, the alleged anti-competitive conduct of the National Association of Realtors
("NAR") and Zillow. *See Raulerson v. Massanari*, 25 F. App'x 589, 594 (9th Cir.
2001) (denying motion to seal because presumption of access is rebutted only if
"countervailing interests *heavily* outweigh the public interests in access" (emphasis
added and citation omitted); *Ctr. for Auto Safety,* 809 F.3d at 1097) (court must
balance interests of the public against those of the party seeking to seal judicial
records).

Finally, in moving to seal judicial records, Zillow must comply with Circuit
Rule 27-13. Under that Rule, a party that wishes to seal a document or portion of a
document, "whether or not it was sealed in the district court," must file a motion
that "*explain[s] the specific reasons* for this relief and describe[s] the potential for
irreparable injury in the absence of such relief." 9th Cir. R. 27-13(e) (emphasis
added); *see Bush v. Rust-Oleum Crop.*, No. 24-913, 2024 WL 1328234, at *1 (9th

4

Cir. Mar. 26, 2024) (same). "In addition, the motion shall request the *least restrictive scope of sealing* and be *limited in scope to only the specific documents or portion of documents that merit sealing*." 9th Cir. R. 27-13(e) (emphasis added).

Here, Zillow has failed to meet these exacting requirements to justify sealing the designated pages of the briefing and record in this case. As noted, Zillow's sole evidentiary submission concerning the need for confidentiality is a declaration from Ryan Duffey, who identifies himself as a senior litigation paralegal employed by Zillow. According to Mr. Duffey's LinkedIn profile, he has no legal training beyond a paralegal certificate.[1] There is no indication in his profile or declaration that he has any operational responsibility for any of the subject matter areas of the documents and testimony he describes as confidential. Nor does he indicate that he conferred with Zillow executives who do have such responsibilities and might have personal knowledge, which Mr. Duffey lacks, of the nature or scope of potential harm to Zillow from disclosure. And since, as shown below, much of the information at issue was disclosed publicly in the district court, Mr. Duffey apparently is not even familiar with the record in this case.

In short, Mr. Duffey is not qualified to give competent testimony on the matters which he addresses. *See, e.g., IPSL, LLC v. Coll. Of Mount Saint Vincent*,

---

[1] https://www.linkedin.com/in/ryan-duffey-94910841/.

383 F. Supp. 3d 1128, 1135 (D. Or. 2019) (declaration supporting motion must be

"'made on personal knowledge, set out facts that would be admissible in evidence,

and show that the . . . declarant is competent to testify on the matters stated")

(quoting *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp.3d 929, 946 (N.D. Cal. 2014).

The motion should be denied on this basis alone.

In any event, the statements of its paralegal on which Zillow solely relies are

conclusory assertions that the information consists of trade secrets, described

vaguely and variously as "strategic," "internal," potentially (not actually) useful to

competitors, or potentially harmful to third parties. Zillow has failed to satisfy its

burden of specificity and to put forth a competent evidentiary showing of "[o]nly the

most compelling reasons" to justify sealing materials related to the appeal. *See Shane

Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F3d 299, 305 (6th Cir. 2016);

*In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (applying "compelling

countervailing interests" test).

## I.    **Redactions to Brief**

Zillow seeks to redact two statements from REX's Opening Brief:

(a)     that "…Zillow knew that consumers hated" the two-tab display;

(b)     "Moreover, Zillow executives acknowledged that following NAR's

        IDX rules would cost Zillow a measure of independence, while the

        benefits to Zillow's business model were at best 'a wash.'"

6

Both statements, while perhaps embarrassing to Zillow because they contradict the pro-consumer image Zillow seeks to project,[2] tend to show that Zillow made a deliberate choice to engage in concerted action that it knew was anti-consumer and anticompetitive. This argument is directly relevant to demonstrating that REX's antitrust claims should not have been dismissed.

A.    **"Zillow knew that consumers hated" the two-tab display**

This statement in REX's brief summarizes evidence, based on numerous internal Zillow documents, of reactions to the two-tab display that Zillow solicited from consumers before and after its implementation. Those reactions appear conspicuously in the public record in this case and if anything, the statement in the brief is mild by comparison. In its order granting REX's motion for summary judgment on the issue of whether Zillow's website made false statements, 2-E.R.-165, the district court described these facts at length as follows:

> Before Zillow launched the two-tab system, it evaluated the associated risks. ***
>
> The two-tab design was met with **hostility** by the users of Zillow's websites and Apps. Zillow recorded a thirty-two (32%)

---

[2] Rich Barton, Zillow's CEO, testified that Zillow was "very, very focused on the consumer mover as our North Star and turning on the lights in the room[.]" Barton Dep. Designation 72:6-8. Mr. Barton's deposition designations, which were played in court but not transcribed by the court reporter, are Exh. 5 to DE 478. *See* Thomas Trial Tr. 108:7-8 "'Customers are our North Star' is something we say often."; *see also id.* at 107 (Zillow says it wants to "turn on the lights, which means transparency").

7

increase in complaints during the weeks after the transition, which included the following comments:

*Why separate listings for realtor and for sale by owners? Why?*

*I do not like the separate tabs for "agent listings" and "other listings." I think you should just show all results. Why prop up agents when the whole point of your app is to circumvent the need for a high commission agent?'*

*I do not like that you have divided the agent and by owner listings making us toggle. I use your app daily – you have just complicated things instead of simplifying things. Why do companies do this stuff? Seems to me this was done for realtors. They are the ones that have everything to gain by this change!*

*If you list your property and it's "for sale by owner" buyer will not see it unless they happen to click on the very small "other" button. The properties that automatically appear are "listed by agents." Which defeats the whole purpose of using Zillow or Trulia. Agent have the MLS and many apps to use. Go back to like it was when all properties came up in a search area.* \*\*\*

Zillow also received the following feedback:

The average person looking for a new house won't see your FSBO listing unless they toggle to the "other listing" section. This is ridiculous and makes listing FSBO much more challenging for people to see your house. One more way to push people to list with agent. This was purely a money decision for Zillow and everyone should rate it 1 star because of it. (AppStore review)

Really **hate** the "Agent/Other" segregation when browsing houses. As a prospective homebuyer I don't see the need for it. I understand why Zillow would get pressured by realtor association to include this, so when people are browsing they prioritize realtor listed properties unless I remember to constantly click back and forth between the two. So annoying! From a buyer

8

standpoint should I care who's selling it? I guess they know where their bread is buttered. (AppStore review)

Totally dislike the new changes on Zillow with having to toggle back and for the between the real estate agents and other properties. THUMBS DOWN! (AppStore review)

2-E.R.-170-72. (emphasis added).

Zillow's knowledge—both before and after it implemented the radical change in the presentation of the home page of its website—of consumers' emphatic dislike of the display change, is thus already public information. There is no basis for confidential treatment.

### B. Moreover, Zillow executives acknowledged that following NAR's IDX rules would cost Zillow a measure of independence, while the benefits to Zillow's business model were at best 'a wash.'"

This statement is based on internal emails in which Zillow executives discussed the pros and cons of joining NAR and adopting its anti-competitive IDX rules. It is directly responsive to Zillow's contention in opposing the antitrust claims that it lacked anticompetitive intent. The gist of the statement is the same as the district court's quotation of a Zillow document in its Order granting summary judgment on the antitrust claims, 1-ER-47: "Ex. JJJ to Goldfarb Decl. (docket no. 405-57) (recognizing that the user experience following Zillow's switch to IDX feeds would be 'a wash at best,' but would provide Zillow 'business model flexibility.'"). Moreover, consistent with the statement in the Opening Brief, Errol Samuelson, Zillow Senior Vice President, testified publicly at trial that Zillow

9

seriously weighed the pros and cons of switching to IDX feeds and complying with NAR's IDX rules. Samuelson Trial Tr: (September 26, 2023) 27:1-18; 29:6-16; 33:1-7.

Paralegal Duffey offers no explanation why REX's argument based on internal Zillow documents that are already discussed in a public court order and trial testimony should be redacted, other than rank speculation that the information which is three years old could be useful to competitors. This is plainly insufficient. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006) (affirming magistrate's decision to unseal records in part because information at issue was already in the public record); *Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17-cv-555-L-NLS, 2018 WL 6601671, *2 (S.D. Cal. Dec. 14, 2018) (denying motion to seal because "[d]efendants have not shown why this outdated [financial] information would have any effect on [its] competitive standing at the present").

## II.     **Redactions and Sealing Record Excerpts**

Zillow seeks numerous and extensive redactions to the Record Excerpts based on the Duffey declaration, in which it claims potential harm to its business interests because the information is non-public or sensitive. Apart from the declaration being incompetent, Zillow offers no factual basis for its wholly speculative assertions of harm. For those reasons alone, Zillow's motion should be denied in its entirety.

10

Additionally, many of the requested redactions involve information that is publicly available or was the subject of documents and testimony presented publicly in the district court.

### A.    <u>Volume 7 Redactions</u>

Zillow seeks redactions from Volume 7 of the Record Excerpts that include internal emails assessing the impact of the co-mingling rules and the display change generally (1370-1375), the actual impact of the two-tab display on Zillow users (1345-1369, 1419-1421, 1522-1524), and the impact of the two-tab display on Zillow's customer rating (1422-1443). Paralegal Duffey's refrain is that these documents contain internal metrics assessing the performance of the two-tab display, information regarding Zillow's categorization of listings to comply with the IDX rules, and possible future approaches to IDX rule compliance.[3]

These bare recitals fall far short of meeting the "compelling reason" and "irreparable harm" standard. Zillow's motion also ignores that this information is

---

[3] Zillow also requests sealing of page 180 of the deposition of Matthew Hendricks that appears in Volume 9 at 9-RE-2144. In that deposition, Mr. Hendricks was asked to confirm that almost immediately after implementation of the two-tab display, Tab 2 traffic was down by more than 70% and that usage of the Tab 2 "other" toggle was only 4 to 7%. Both these matters were discussed in the trial testimony of Zillow employee Teresa Thomas. Thomas Trial Tr. 111:2-6; 112:11-13. Mr. Hendricks also testified that his Zillow colleague, Sarah Bonert, described Tab 2's performance as "terrible." Ms. Thomas testified in court regarding the "overwhelming negative feedback to Tab 2 experience." *Id.* at 110:2-5. Accordingly, there is no basis for Zillow's request to seal such publicly available material.

part of the public record, including the district court orders discussed above, as well as the trial testimony of Teresa Thomas and Errol Samuelson and the associated exhibits. *See* Thomas Trial Tr. (September 21, 2023) 70:18-71:14; 77:7-78:20; 79:16-80:12; 90:12-25; Samuelson Trial Tr. (September 26, 2023) 60:11-62:3; 74:19-75:15. The cross-examination of Ms. Thomas covered much of this subject matter. She testified to the lack of usage of consumer usage of Tab 2, (the "Other Listings tab to which REX, FSBO, and other non-NAR-member listings were relegated) the drop in page views and submits, customer confusion and hostility. The following exhibits, among others, were admitted (or, if previously admitted, discussed) during Ms. Thomas' trial testimony: 35, 43, 44, 45, 824, and 993.[4] Thomas Trial Tr. 109:16-115:20; 116:24-117:25; 118:17-120:7; 120:19-122:24; 124:23-125:7; 132:6-21. Exhibit 44 summarizes Zillow's evaluation of the two-tab display in November 2020, two months before its implementation; the exhibit reflects that Zillow knew that the new display would deliver an inferior customer experience, that consumers would be confused by the display, and that Tab 2, which included REX's listings, would be "effectively invisible." Exhibits 824 and 893 describe customer reactions to the new display, customer usage of Tab 2, the negative impact on Zillow's web customer rating, revenue attributable to each category, and

---

[4] These exhibits, all admitted in trial, are attached to the Goldfarb Declaration, which is filed herewith.

strategies for mitigating these adverse impacts. Exhibit 35 acknowledges that "If a listing is not in the default view, its business value drops by half;" that Tab 2 usage was low (4-7% of all sessions); and that page views of For Sale By Owner ("FSBO") listings dropped by 80%. Given that these documents were publicly admitted as trial exhibits, Zillow's request to keep the same and similar information under seal is meritless.

     **B.**    <u>**Volume 8 and 9 Redactions (Evans Report)**</u>

     Volume 8 and the first 122 pages of Volume 9 consist of the opening Expert Report (with accompanying appendices) of David S. Evans, REX's antitrust liability and damages expert.

     Zillow requests that statements from pages 15, 23, 35, 109, 125-27, 157-59, 196, 198, and 223-24 of the report at 9-R.E.-1584, 1592, 1604, 1674, 1694-96, 1726-28, 1765, 1767, 1792-93 be redacted because they refer to consumer confusion and dissatisfaction resulting from the two-tab display and the precipitous drops in page views of FSBO listings after Zillow began enforcing NAR's Segregation Rule. These statements, as explained above, are important for understanding the claims against Zillow and are consistent with publicly available testimony and documents. There is simply no reason to redact them.

     Zillow also requests sealing of footnotes 73, 106 and 216 of the Evans Report (9-ER-1615, 1633-34, and 1675). However, significant parts of these footnotes

consist of information publicly available on the internet, including:

https://www.nar.realtor/membership/historic-report;

https://www.realtrends.com/articles/real-estate-agent-commissions-continue-to-drop; https://cdn2hubspot.net/hubfs/6521591/Membership-listings-graph.png;

https://www.listingsspark.com/blog/buyer-agent-commissions.

Other sources cited by Evans are Fannie Mae and real estate firm Keller-Williams. None of the information is proprietary to Zillow and there is no basis to seal it.

### C.    Volume 9 Redactions

Volume 9 includes the Expert Report of Aradhna Krishna, REX's marketing expert. Zillow requests sealing portions of the report at pages 9-RE-1995-97; 1999-2000; and 2004. In these pages, Dr. Krishna recounts statements in Zillow documents regarding the lack of A/B testing of the two-tab display; Zillow's choice of MLS listings for its default; Zillow's assessment of the impact of the two-tab display on Zillow users; and — again— the confusion that Zillow's users experienced. As discussed, virtually all of this information was covered during Ms. Thomas's trial testimony. In addition, Dr. Krishna testified to all of these matters in open court at trial. A. Krishna Trial Tr. (September 25, 2024) 25:11-26:2; 26:16-29:5; 29:21-30:2; 31:11-32:10. Consequently, Zillow cannot meet its heavy burden to justify sealing.

14

Volume 9 also contains REX's motion for summary judgment. Zillow requests redaction of statements on pages 9-R.E.-2057-58 and 2065, which contain similar statements to those discussed above about the impact of the display change on consumers and the adverse impact on Zillow of adapting the NAR rules. That information is again part of the public record, and the request should be denied for the same reasons discussed above.

### D.     Volume 10 Redactions

Volume 10 consists in part of excerpts of the deposition of Errol Samuelson. Zillow seeks to redact pages 13, 15-18, 21-24, 33-35, and 64-66 of the deposition at 10-R.E.-2158-72. On pages 13, 15-18 and 21-23, Mr. Samuelson was asked about a publicly filed lawsuit where he was a named defendant, based on the public complaint and a public order in the case, and there is no basis for seeking redaction of that testimony. On page 24, he was asked about a NAR rule and whether Zillow complied with that rule, and there is no basis to seal that testimony.  On pages 33-35, Mr. Samuelson was asked about who reported to him at Zillow and whether he considered them valued and professional colleagues. Again, there is no basis for seeking to redact that testimony. On pages 64-66, Mr. Samuelson discusses a possible alternative to IDX feeds and says: ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████ That statement is an admission by a senior Zillow executive that is clearly relevant to REX's arguments that NAR and Zillow engaged in unlawful behavior.

Volume 10 also includes excerpts of the deposition of Jonthan Mabe, another Zillow executive, and assorted emails. Zillow seeks to redact names of third parties from those documents and from Mr. Samuelson's deposition as well, but fails to explain, among other shortcomings, on a name-by-name, document-by-document basis why those names should be redacted.

## **CONCLUSION**

Rather than burden this Court with a tedious analysis of each and every one of Zillow's extensive proposed redactions, REX submits that the sheer number of requested redactions that are the subject of publicly available testimony, exhibits, and orders demonstrates that Zillow's requests are indiscriminate and ill-founded. Zillow has failed to make any serious effort to filter or limit its redactions to critical pieces of confidential information (if any such exist). This alone violates the requirements that this Court repeatedly has emphasized in its rules and case law. Zillow further relies entirely on the declaration of an individual who lacks the personal knowledge and competence to testify to the sensitive nature of the information or that its disclosure could cause Zillow irreparable harm. His vague and

16

conclusory assertions fall far short of the "compelling reason" and "irreparable harm" standard.

For the reasons shown in this Brief, all of Zillow's requests to seal should be denied.

July 12, 2024                                    Respectfully submitted,

                                                 /s/ *David Boies*
STEPHEN N. ZACK                                  DAVID BOIES
URSULA UNGARO                                    DAVID A. BARRETT
CARL GOLDFARB                                    BOIES SCHILLER FLEXNER LLP
JON L. MILLS                                     333 Main Street
JAMES GRIPPANDO                                  Armonk, New York 10504
JASON S. ZACK                                    (914) 749-8200
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, Florida 33131                             SIMON P. LEEN
(301) 359-8400                                   BOIES SCHILLER FLEXNER LLP
                                                 2029 Century Park East, Suite 1520
                                                 Los Angeles, California 90067
                                                 (213) 629-9040

*Counsel for Plaintiff-Appellant REX Real Estate Exchange, Inc.*

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**  24-685

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

(1) Motion to Maintain Limited Portion of REX's Opposition Brief Under Seal;
(2) Proposed Redaction.

**Signature**  /s/ John A. Jurata, Jr.    **Date**  Aug 2, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**    *Rev. 12/01/2018*